Evan J. Smith (SBN 242352)
esmith@brodsky-smith.com
Ryan Cardona (SBN 302113)
rcardona@brodsky-smith.com
BRODSKY & SMITH, LLC
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Tel:   877.534.2590
Fax:  310.247.0160

Attorneys for Plaintiff
JORGE LOPEZ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE LOPEZ<br><br>　　　　Plaintiff,<br>　　vs.<br><br>A&S METALS RECYCLING, INC., a California corporation;<br><br>　　　　Defendant, | Civil Case No.: CV 17-1735-GW-AFMx<br><br>**CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

# CONSENT DECREE

The following Consent Decree is entered into by and between Jorge Lopez ("Plaintiff") and A & S Metals Recycling, Inc. ("A&S"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties;"

**WHEREAS,** Plaintiff is a citizen of the State of California;

**WHEREAS,** Plaintiff is concerned with the environmental health of the Los Angeles River, and uses and enjoy the waters of the Los Angeles River, its inflows, outflows and other waters of the Los Angeles Watershed;

**WHEREAS**, A&S is the owner and operator of a metal recycling facility and local transportation company at 2261 East 15th Street, Los Angeles, California 90021, hereinafter referred to by the Settling Parties as the "Facility;"

**WHEREAS,** Plaintiff's use and enjoyment of these waters are negatively affected by the pollution allegedly caused by the operations at the Facility;

**WHEREAS,** Plaintiff acts in the interest of the general public to prevent pollution in these waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes;

**WHEREAS,** the discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit"), and as amended by Order No. 2014-0057-DWQ ("2014 Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA")(collectively the "Industrial General Permit" or "IGP");

**WHEREAS**, on August 22, 2016, Plaintiff sent A&S, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Los Angeles Regional Water Quality Control

Board ("Regional Board" or "RWQCB") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Industrial General Permit at the Facility;

**WHEREAS**, on March 3, 2017, Plaintiff filed a complaint against A&S in the United States District Court, Central; District of California (Case No.: 2:17-cv-01735-GW-AFM), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Industrial General Permit at the Facility ("Complaint");

**WHEREAS,** the Settling Parties have conducted written discovery and on November 21, 2017, Plaintiff conducted a Rule 34 site inspection of the Facility, as permitted under the Federal Rules of Civil Procedure;

**WHEREAS**, Plaintiff alleges A&S to be in violation of the substantive and procedural requirements of the Industrial General Permit and the Clean Water Act with respect to the Facility;

**WHEREAS**, A&S denies all allegations in the Notice Letter and Complaint relating to the Facility and specifically asserts that it does not discharge, but rather retains all storm water on site where it is transported offsite for appropriate disposal;

**WHEREAS**, On November 6, 2018 the California State Water Resources Control Board adopted an amendment to the IGP ("Attachment I") attached hereto as Exhibit 1;

**WHEREAS**, Attachment I provides clarity to a new on-site compliance option by which dischargers who retain all precipitation up to and including the 85th percentile storm event are deemed to be in compliance with the Discharge Prohibitions, (Section III.C) the Effluent Limitations (Section V.C) and the Receiving Water Limitations (Section VI) of the IGP ("On-Site Compliance Option");

**WHEREAS**, Plaintiff and A&S have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, upon entry of this Consent Decree, Plaintiff agrees to dismiss the Complaint with prejudice; and

**WHEREAS**, all actions taken by A&S pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District;

3. The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4. Plaintiff has standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

### I. OBJECTIVES

**A.** **Express Purpose.** It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in his Complaint. In light of these objectives and as set forth fully below, A&S agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the IGP, as amended, and all applicable provisions of the Clean Water Act.

**B.** **Best Management Practices ("BMPs").** Following the Rule 34 inspection by Plaintiff's environmental consultant, Bill Habenicht of Compliance Management, Inc., A&S and Plaintiff's representatives, including Mr. Habenicht, met and conferred on

improvements to BMPs at the Facility to the extent appropriate and feasible and in light of the amendments to the IGP, in conjunction with industry standards and applicable to the Facility's industrial activities in order to prevent and reduce storm water contact with industrial pollutants. The parties agreed to the implementation of the following Source Control and Good Housekeeping BMPs, which Defendant has represented have been implemented as of this date:

   a) Installation and maintenance of berms around the loading dock at 2261 East 15th Street;
   b) Installation and maintenance of berm returns at Mateo Place Gate at 2110 East 15th Street;
   c) Introduction of Standard Operating Procedures for Handling Free Liquids Associated with Aluminum Cuttings at 1960 Mateo (see Exhibit 2 attached hereto and incorporated herewith); and
   d) Introduction of Standard Operating Procedures for Cleaning Drive Out Aprons at all locations when a rain event of ½ inch or more is predicated by NOAA with a 50% or greater probability (see Exhibit 3 attached hereto and incorporated herewith).

Plaintiff will have an opportunity to evaluate the effectiveness of these BMPs during the inspections permitted pursuant to this Consent Decree (*see* Section IV (A), *infra*.)

With respect to Plaintiff's allegations in the NOV and Complaint that Defendant was not performing adequate storm water testing, the Settling Parties negotiated a resolution whereby Defendant could address the allegations regarding the lack of testing by one of the following:

**C.** **No Exposure Certification.** The Settling Parties agree that the Facility, or any designated portions of the Facility identified by a unique Waste Discharger Identification Number ("WDID"), that satisfy the requirements of and receive an approval for a "No Exposure Certification" as that term is defined in the IGP shall be considered to be in full compliance with the terms and obligations of this Consent Decree and the provisions of

Section III of this Consent Decree shall not apply so long as the No Exposure Certification is valid and remains in effect.

**D.     Notice of Termination.**  The Settling Parties agree that the Facility, or any designated portions of the Facility identified by a unique WDID, that satisfy the requirements of and receive an approval for a "Notice of Termination" as that term is defined in the IGP shall be considered to be in full compliance with the terms of this Consent Decree and the provisions of Section III of this Consent Decree shall not apply so long as the Notice of Termination remains in effect.

**E.     Compliance through Design for 85th Percentile Storm Event.**  The Settling Parties agree that the Facility, or any designated portions of the Facility identified by a unique WDID, that are designed such that the Facility or portions thereof identified by the WDID are designed to capture and retain on site or transfer to an approved water recycling facility two consecutive 85th Percentile Storm Events as that term is defined by the IGP and Attachment I as adopted by the State Water Resources Control Board on November 6, 2018 shall be considered to be in full compliance with the terms of this Consent Decree and the provisions of Section III of this Consent Decree shall not apply in so far as this Consent Decree is concerned.  Defendant, however, acknowledges its obligations to remain in compliance with the IGP as amended including Attachment I and those provisions set forth in Section III as applicable.  Defendant has represented that it has chosen the On-site Compliance Option and has provided Plaintiff with a report related thereto.[1] Further, the Settling Parties acknowledge that regardless of the On-Site Compliance Option, Defendant has instituted all of the BMPs set forth in Section III.

**II.     AGENCY REVIEW AND TERM OF CONSENT DECREE**

**A.     Agency Approval.**  Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days

---

[1] See, Ex. 4, attaching April 2, 2018, Technical Memorandum completed by Ryan Janoch, PE (CA-C78735), Mapistry, Inc. indicating that A&S has designed and implemented an approved water recycling facility two consecutive 85th Percentile Storm Event as that term is defined by the IGP. Plaintiff takes no position on Defendant's design and implementation of the water recycling facility but will evaluate same as part of the inspections agreed to in this Consent Decree (Section IV (A), *infra*.).

of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to A&S if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

**B.** **Effective Date.** The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

**C.** **Termination Date.** This Consent Decree shall terminate eighteen (18) months after the Effective Date ("Termination Date"), unless there is a prior ongoing, unresolved dispute regarding A&S' compliance with this Consent Decree.

**III.** **POLLUTION CONTROL REQUIREMENTS**

**A.** **Storm Water Pollution Reduction Measures**

    **1.** The storm water pollution control measures required by this Consent Decree shall be operated to manage storm water discharges through full compliance with the IGP and Attachment I as adopted by the SWRCB on November 6, 2018.

    **2.** A&S will assure the continuation of the following Storm Water Best Management Practices ("BMPs"), as more fully described in A&S' Storm Water Pollution Prevention Plan ("SWPPP"), which shall be implemented at the A&S Facility, the boundaries of which are outlined on the A&S Facility Site Map ("Site Map"). The Parties agree that the SWPPP may be modified from time to time as more fully described in this Consent Decree. Any significant modifications to the SWPPP shall be uploaded to the California Stormwater Multiple Application and Report Tracking System ("SMARTS") including, without limitation, the reporting requirements set forth in Section II(F) and (G) of Attachment I.

    **(a)** **Non-Structural BMPs**

        **(i)** **Good Housekeeping**

a) Observe and maintain industrial activity outdoor areas;
b) Minimize or prevent material tracking offsite;
c) Minimize dust generated by industrial activities;
d) Cleanup areas affected by rinse and wash water;
e) To the extent practical, cover stored industrial materials that can be readily mobilized by contact with storm water;
f) Contain stored non-solid industrial materials or wastes that can be transported or dispersed by the wind or contact with storm water;
g) Prevent improper disposal of rinse/wash waters;
h) Minimize storm water discharges from non-industrial areas that contact industrial areas of the facility; and
i) Minimize flows of offsite storm water and Non-Storm Water Discharges ("NSWDs") into material handling areas.

(ii) **Preventative Maintenance**
a) Identify industrial equipment and systems that may leak;
b) Observe the equipment and systems to detect leaks;
c) Establish a schedule for maintenance; and
d) Establish procedures for maintenance and repair.

(iii) **Spill Prevention and Response Procedures**
a) Maintain procedures and/or controls to minimize spills and leaks;
b) Implement spill and leak response procedures to prevent industrial materials from being discharged;
c) Clean up spills and leaks promptly;
d) Identify and describe needed spill and leak response equipment; and
e) Train Storm Water Team in appropriate spill response.

(iv) **Material Handling and Waste Management**
a) Prevent or minimize handling of industrial materials or wastes that can be readily mobilized;

               **b)** Contain all stored non-solid industrial materials or wastes that can be transported or dispersed by the wind or rain;

               **c)** Cover industrial waste disposal containers that contain industrial materials when not in use;

               **d)** Divert run-on and storm water generated from the Facility within the Facility away from all stockpiled materials;

               **e)** Clean all spills of industrial materials or wastes; and

               **f)** Observe and clean as appropriate any outdoor material or waste that could cause contamination to storm water if contact is made.

      **(v)** **Employee Training.** A&S' Qualified Industrial Storm Water Practitioner ("QISP") will continue to provide sufficient training to the appropriate team members assigned to perform activities required by this Consent Decree ("Storm Water Team") including:

               **a)** Preparing or acquiring necessary and appropriate training manuals;

               **b)** Providing a training schedule; and

               **c)** Maintaining training documentation.

      **(vi)** **Quality Assurance and Record Keeping**

               **a)** Develop and implement management procedures to ensure implementation of plans;

               **b)** Develop a method of tracking and recording program implementation; and

               **c)** Maintain implementation records (i.e., BMP deployment records, employee training logs, spill occurrence and clean-up records).

**(b)** **Non-Storm Water Discharges (NSWDs)**

      **(i)** Reduce or prevent the contact of authorized NSWDs with materials or equipment that are potential sources of pollutants;

      **(ii)** Reduce, to the extent practicable, the flow or volume of authorized NSWDs;

|   |   |   |
|---|---|---|
| 1 | **(iii)** | Ensure that authorized NSWDs do not contain quantities of pollutants that cause or contribute to an exceedance of water quality standards ("WQS") as set forth in the RWQCB Basin Plan; and |
| 4 | **(iv)** | Reduce or prevent discharges of pollutants in authorized NSWDs in a manner that reflects best industry practice considering technological availability and economic practicability and achievability. |

**(c)** **Waste, Garbage, and Floatable Debris**

**(i)** Waste receptacles exposed to storm water shall be tightly closed or otherwise covered when not in use.

**B.** **Monitoring Requirements**. In compliance with Attachment I of the IGP, A&S shall:

**1.** Conduct representative sampling and analysis of all discharges of storm water associated with industrial activities in compliance with the Sampling and Analysis Section XI.B.5-11, C.2, and C.6 of this General Permit and Attachment H,14 with the exception of comparing monitoring results to NALs in Section XI.B.7;

**2.** Submit all sampling and analysis information and results in SMARTS within 30 days after obtaining the information and results; and

**3.** Comply with the Visual Observation and Methods and Exceptions Section XI.A and C,16 respectively.

**C.** **A&S Document Provisions.** During the life of this Consent Decree, A&S shall copy Plaintiff on all documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality that are not otherwise available through SMARTs. Such reports and documents shall be transmitted to Plaintiff on the date they are sent to the agencies, counties, and/or municipalities. Any correspondence related to A&S's compliance with the Permit or storm water quality received by A&S from any regulatory agency, state or local agency, county, or municipality shall be provided to Plaintiff within ten (10) business days of receipt by A&S. Provided, however, that this Consent Decree shall not require

disclosure of any information or documents subject to the Attorney Client Privilege or the Attorney Work Product doctrine.

## IV. SITE INSPECTIONS AND COMPLIANCE MONITORING AND OVERSIGHT

**A.  Site Inspection.**  Plaintiff may request one site inspection of the Facility during each nine (9) month half of the term of this Consent Decree ("Site Inspection").  Up to three (3) of Plaintiff's representatives may participate in the Site Inspection, one of whom shall be a QISP.  A Site Inspection shall occur during normal business hours.  Plaintiff shall make a request to A&S for a Site Inspection at least ten (10) business days before the date of a proposed Site Inspection, and Plaintiff shall simultaneously notify A&S's counsel of any request.  Notice shall be provided by electronic mail.  All visitors to the Facility shall execute and agree to the terms of Exhibit 5 attached to this Consent Decree prior to entering the Facility.

**B.  Reimbursement of Monitoring Costs.**  A&S shall make a one-time payment of Seven Thousand Five Hundred Dollars ($7,500) to Brodsky & Smith in order to compensate the fees and costs to be incurred for monitoring A&S's compliance with this Consent Decree, including, but not limited to the Site Inspections required hereunder.  Payment shall be made within ten (10) business days of the receipt of invoice documenting the reimbursable expense and made payable to "Brodsky & Smith, LLC" via U.S. Mail or other commonly accepted delivery service.

## V. ENVIRONMENTAL PROJECT & REIMBURSEMENT OF LITIGATION FEES & COSTS

**A.  Environmental Project.**  To remediate the alleged environmental harms resulting from non-compliance with the IGP alleged in the Complaint, A&S agrees to make a one-time payment of Five Thousand Dollars ($5,000) to "The Trust for Public Land" and mailed to The Trust for Public Land, attention Melissa Guerrero, 135 West Green Street, Pasadena, CA 91105, via U.S. Mail.  The payments shall be made within ten (10) business days of the Effective Date via U.S. Mail or other commonly accepted delivery service and

payable to The Trust for Public Land. The payment will assist in funding "South LA Green Alleys," a project run by The Trust for Public Land in partnership with Los Angeles Bureau of Sanitation to develop green alleys in order to deliver environmental and social benefits to dense and disadvantaged neighborhoods in South LA. Green Alleys decrease the urban heat-island effect and facilitate the absorption and treatment of stormwater and dry weather runoff through light-colored pervious paving and plantings combined with dry wells, swales, and other stormwater BMPs. Environmental benefits include measurable improved groundwater recharge, flood control, increased water quality, reduced heat island effect and expanded wildlife habitat. Community benefits include opportunities for outdoor recreation and increased green spaces in park poor neighborhoods.

**B.     Reimbursement of Attorneys' Fees and Costs.** A&S shall pay a total of Sixty-Seven Thousand Five Hundred Dollars ($67,500) to "Brodsky & Smith, LLC" for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the Notice, prosecuting the lawsuit and negotiating this Consent Decree. Payment shall be made payable to "Brodsky & Smith, LLC." Brodsky & Smith, LLC shall provide a W-9 to A&S for that purpose. Payment shall be made within ten (10) business days of the Effective Date via U.S. Mail or other commonly accepted delivery service to Brodsky & Smith, LLC, Attn: Evan Smith, Two Bala Plaza, Suite 510, Bala Cynwyd, PA 19004.

**C.     No Payment to Plaintiff.** Plaintiff will not be receiving any consideration, direct or indirect, out of any of the funds A&S is required to pay pursuant to the terms of this Consent Decree.

**VI.    DISPUTE RESOLUTION AND RETENTION OF JURISDICTION**

**A.     Continuing Jurisdiction.** This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, unless a Party files and is

granted a timely motion requesting an extension of time for the Court to retain jurisdiction. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

**B.     Meet and Confer.**  A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute.  The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice.  The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

**C.     Dispute Resolution.**  If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, then the parties shall attempt to settle the dispute through mediation provided by the American Arbitration Association ("AAA") pursuant to AAA's Commercial Mediation Provisions in effect at the time the act or acts being disputed occurred.  Nothing in this paragraph precludes the Settling Parties from moving the Court for enforcement of this Consent Decree in the event meet and confer and/or arbitration or mediation is not successful.

**D.     Burden of Proof.**  In any dispute resolution proceeding, the Party invoking the dispute resolution procedures provided herein shall have the burden of demonstrating that the other Party has failed to meet its obligations as set forth herein.

**E.     Enforcement Fees and Costs.**  If formal dispute resolution is undertaken, then litigation costs and fees incurred in conducting such shall be awarded to the prevailing party.

**VII.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

**A.     Plaintiff's Public Release of Claims.**  This Consent Decree is a final and binding resolution between Plaintiff, on his own behalf, and on behalf of the public and in the public interest, and A&S, and their parents, subsidiaries, affiliated entities under common ownership, directors, officers, agents, employees, attorneys, if any (collectively "Releasees"), and shall have a preclusive effect such that no other person or entity, whether

purporting to act in his, her, or its interests or the public interest shall be permitted to pursue and/or take any action with respect to any violation of the CWA that was alleged in the Complaint, or that could have been brought pursuant to the Notice.

**B.     Additional Storm Water Compliance Challenges.** Plaintiff agrees that for as long as A&S complies with its obligations under the Agreement, Plaintiff will not seek to challenge A&S's compliance with the IGP in any way, including but not limited, any future citizen suit pursuant to the Clean Water Act or other citizen suit related to storm water compliance during the term of this agreement.

**C.     Plaintiff's Release of Additional Claims.** As to Plaintiff for and in his individual capacity only, this Consent Decree shall have preclusive effect such that he shall not be permitted to pursue and/or take any action with respect to any other statutory or common law claim, to the fullest extent that any of the foregoing were or could have been asserted by him against A&S or the Releasees based on the facts alleged in the Complaint and the Notice, whether or not based on actions committed by A&S.

**D.     Waiver of Rights Under Section 1542 of the California Civil Code**

   **1.**     Plaintiff acting in his individual capacity waives all rights to institute any form of legal action, and releases all claims against A&S, and the Releasees, (referred to collectively in this Section as the "Claims"). In furtherance of the foregoing, Plaintiff waives any and all rights and benefits which he now has, or in the future may have, conferred upon him with respect to the Claims by virtue of the provisions of § 1542 of the California Civil Code, which provides as follows:

   A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

   **2.**     Plaintiff understands and acknowledge that the significance and consequence of this waiver of California Civil Code § 1542 is that even if Plaintiff suffers future damages arising out of or resulting from, or related directly or indirectly to, in whole

or in part, the facts in the Complaint, Plaintiff will not be able to make any claim for those damages against Releasees.

**E.** **A&S's Release of Plaintiff.** A&S, on behalf of itself, its past and current agents, representatives, attorneys, successors and/or assignees, hereby waives any and all claims against Plaintiff, his attorneys, and other representatives for any and all actions taken or statements made (or those that could have been taken or made) by Plaintiff and his attorneys and other representatives, whether in the course of investigating Claims or Otherwise.

**F.** **Parties' Release.** Unless specifically provided for in this Consent Decree, the Settling Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from any additional attorney's fees or expenses related to the resolution of this matter.

**G.** Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to A&S's compliance with the IGP or the Clean Water Act occurring or arising after the effective date of this Consent Decree.

## VIII. MISCELLANEOUS PROVISIONS

**A.** **No Admission of Liability.** Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, conviction or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. A&S maintains and reserves all defenses it may have to any alleged violations

that may be raised in the future.  Specifically, but without limitation, neither execution nor approval of this Consent Decree, nor any action taken by any of the Parties to enforce or honor the terms of this Consent Decree shall constitute a violation of 33 U.S.C. § 1319(c) for purposes of 33 U.S.C. § 1368.

**B.**	**Construction.**  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the IGP, the Clean Water Act, or specifically herein.

**C.**	**Choice of Law and Venue.**  The laws of the United States shall govern this Consent Decree<u>, with venue proper only in the Central District of California.</u>

**D.**	**Severability.**  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**E.**	**Correspondence and Notices.**  Any and all notices and/or correspondence between the Parties provided for or permitted under this Consent Decree shall be in writing and personally delivered or sent by:

**1.**	First-class (registered or certified) mail return receipt requested; or

**2.**	Overnight or two-day courier; or

**3.**	By email with confirmed receipt only (thus at the risk of the email sender); on any Party by the other Party to the following addresses:

<u>If to Plaintiff:</u>

Evan J. Smith, Esq.
Brodsky & Smith, LLC
Two Bala Plaza, Suite #510
Bala Cynwyd, PA 19004
T:	877.354.25900
Email:  esmith@brodsky-smith.com


<u>If to A&S</u>:

Mr. Alex Scott
A&S Metals Recovery, Inc.
2261 East 15th Street

Los Angeles, CA 90021

With Copy to:

Environmental Law Group LLP
Attn: S. Wayne Rosenbaum, Esq.
225 Broadway, Suite #1900
San Diego, CA 92101
T:      619.231.5858
Email:     swr@envirolawyer.com

Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or other generally accepted delivery service or the day of confirmed receipt of any notice sent by electronic email.  Any change of address or addresses shall be communicated in the manner described above for giving notices.

**F.     Counterparts.**  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**G.     Modification of the Consent Decree.**  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties, or upon motion of any Party as provided by law and upon an entry of a modified Consent Judgment by the Court.  If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

**H.     Force Majeure.**  No Settling Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the

California Environmental Quality Act; action or non-action by, or inability obtain the necessary authorizations, approvals, or permits from, any governmental agency; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available, though the cost of such material or equipment is not a factor in whether it is reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance. Delay in compliance with a specific obligation under this Agreement due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Agreement.

**I.     Full Settlement.**  This Consent Decree contains the sole and entire agreement and understand of the Parties with respect to the entire subject matter hereof, and any and all discussions, negotiations, commitments and understandings related thereto. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**J.     Integration Clause.**  This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Settling Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

**K.     Authority of Counsel.**  The undersigned representatives for Plaintiff and A&S each certify that he/she is fully authorized by the party whom he/she represents to approve this Consent Decree as to form.

**L.     Authority.**  A&S certifies that its undersigned representative is fully authorized to

enter into this Consent Decree, to execute it on behalf of A&S, and to legally bind A&S to its terms.

**M.** **Agreement to be Bound.** The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

## IX. COURT APPROVAL

The Settling Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

**SO AGREED AND APPROVED AS TO CONTENT**

**[THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.]**

Dated: _____  **PLAINTIFF**

_____
Jorge Lopez

Dated: _____  **A&S METALS RECOVERY, INC.**

_____
Alex Scott, President

**APPROVED AS TO FORM**

Dated: _____  **BRODSKY & SMITH, LLC**

By: _____
 Evan J. Smith (SBN:242352)
 Attorneys for Plaintiff

Dated: _____  **ENVIRONMENTAL LAW GROUP LLP**

By: _____
S. Wayne Rosenbaum
Attorneys for A&S Metals Recovery, Inc.

**IT IS SO ORDERED.**

Date: February 25, 2019

*[signature]*

GEORGE H. WU,
United States District Judge